The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good afternoon. This is case number 4-23-0742. Rousey v. Breitman et al. Counsel for the appellant, could you identify yourself for the record, please? Yes, Your Honor. Attorney Peter A. Papoutsas on behalf of the appellant, Mr. Glenn Rousey. All right. And counsel for the appellee? Chris Drinkwine, Your Honor. All right. Mr. Drinkwine, we have the benefit of your argument twice today. Yes, Your Honor. Mr. Papoutsas, you may proceed with your argument. Thank you, Your Honor. May it please the court, counsel. This matter comes before the court as a medical malpractice matter that was tried before Judge Fabiano. This matter, though, did not originally start as a medical malpractice, but started on March 29th of 2016 as a simple and outpatient procedure of the removal of a gastric band and a hiatal hernia. What transpired, though, and is clearly reflected in the evidence and in the record, is three extensive surgical procedures that followed several days in the hospital with a follow-up visit to Swedish American Hospital for DVT and a pulmonary emboli. To put it lightly, something that was simple turned into something that was traumatic. What had happened then is that Mr. Rousey then brought a medical malpractice action against Dr. Egal Brightman and Rockford Health Physicians for the negligent performance of his gastric band removal and his hiatal hernia repair. In our brief, we put forward, I believe, eight or nine issues. For purposes of simplicity, I have reduced a lot of those issues down to about four or five, and I will list them to the court right now. First, the issues that came up that we have alleged that we have argued caused prejudice to the plaintiff at the time of trial was the court barring the plaintiff from introducing the full extent of his paid medical bills to the jury. Two, the court barring the plaintiff's expert, Dr. Stravinsky, from testifying as to the plaintiff's increased risk of future injury. Three, unduly limiting his res ipsa loquitur argument or his res ipsa loquitur claim, and that's going to be an issue that I think I will start with. And then four, barring the plaintiff from having a separate line item for emotional distress. Now, as you can see from our brief, we also have other issues in there in regards to editor and in regards to the speculative testimony of their expert, Dr. Gershon, and we can get into that if your honors have questions. Let me suggest that's where you should start, because this is a case where the jury returned a verdict against your client. It did, your honor, and we have been discussion about damages really don't apply until such time as you convince us that the jury's verdict is incorrect. And we have to worry about damages. I agree with you, your honor, only to the extent that what we have argued in our brief is that the jury never even got to the issue of damages because the full weight and force of our damages were never put before the jury because we were barred both of it in his medical bills and to the full extent of our residents. If the jury finds against you, then damages don't matter. How can the court commit error regarding evidence pertaining to damages? Because when the damages, when the plaintiff is barred from putting in his medical bills or the full extent of his damages, as we know, stated in our brief under Illinois law, then what the jury is left with is a vacuum. They're left with a zero. They can't even get to that issue because the very things, the very issues, the very damages that they need to show the malpractice, the very basis of the damages was never presented to them. And that is the prejudice that was suffered by the plaintiff. The jury concludes that the defendant doctor wasn't negligent. Then why do damages matter? The jury concluded that the defendant doctor was not negligent because they didn't see the negligence. They didn't see the medical bills. They didn't see the full extent of the damages affect the jury's determination as to whether or not malpractice occurred. Yes, absolutely. Not only for that proposition. Well, we cited to the in the argument, I'm sorry, in our brief in regards to the Fleming case. I believe that that or and I believe there was also the. The trials case and I and I apologize, Your Honor, let me get to it where they were actually saying that that the medical bills are an extremely important part of the plaintiff's case in chief and that they need to be seen by the jury. If those damages are not seen by the jury, then the jury is left with the impression. Well, he didn't suffer any damages and we started and we cited the case law that actually sites that stands for that. Because what again you're left with is no medical bills, no testimony as to increased future harm. No, no, nothing. There is literally a vacuum there. And then you have a plaintiff that is on the stand saying, I suffered all these things. And yet, when it's time for deliberation, they have nothing before them. Well, there's nothing for them, then that is prejudicial to the plaintiff. Just for clarity, you keep saying zero and damages were allowed to be submitted. You were able to submit about 13000 in medical, weren't you? We were allowed to submit about 13000. Yes, that is. That is what Judge Fabiano allowed us. And we objected to that. All right. So it wasn't zero. So the jury was presented with evidence of damages in the form of medical bills. In response to Justice Steinman's questions, is there any case authority that is on point here that the refusal to allow certain damages testimony is somehow pertinent on the issues of negligence or causation? Well, if your question is in regards to if nothing is presented, then they have nothing to base their award on for causation and for damages. And I think we cited the First National Bank of Elgin v. Swarovski case, the Tipsworth v. Johnson case, and specifically the DeFranco v. Kuzar case. And in that case, if I may quote it, Your Honor, it says, In cases in which a plaintiff's evidence of injury is primarily subjective in nature, pain and suffering, loss of a normal life, etc., increased risk of future harm, and not accompanied by objective symptoms, medical bills based on those symptoms, the jury may choose to disbelieve the plaintiff's testimony as to pain. In such circumstances, the jury may reasonably find the plaintiff's evidence of pain and suffering to be unconvincing. And that's the DeFranco v. Kuzar case. That quote has no bearing on the jury's consideration of negligence or causation, simply as to damages. That's what you just read. Correct, because there was nothing presented to them. Because even that small amount, even that small amount of $13,000, that's a small amount of $13,000. That would not even in any way, shape, or form be able to support the jury having any consideration of malpractice for $13,000. That is virtually a zero. Counsel, I want to ask you about the testimony of Dr. Gerson.  You're claiming from appeal that this was error for the trial court to allow defendant's medical expert, Dr. Gerson, to testify? That is correct, Your Honor. Well, is my understanding of the sequence of events correct? You filed a motion eliminated by that testimony, which the trial court denied. And then at trial, you presented that testimony? I did not present that testimony. That was presented by the defendants. And then in the course of that testimony, we also further objected to it when he started getting into the future risks that would have nothing to do with the malpractice. What Dr. Gerson's testimony was offered at that time was to say whether it was overweight, smoking, etc. Things that were never associated with the plaintiff could lead to his DVT, could lead to his pulmonary embolism, but that not the negligence of Dr. Brightman. And so what we were arguing at the time, and they're still arguing to this day, is what is the basis for that? All you're saying is that these things out there in the ether could affect the plaintiff, his weight, his smoking, his whatever, and that these are risk factors. And that that is what then led to the DVT. That is what then led to the pulmonary embolism. And what we have stated is, that's fine if you want to argue that, but where is the causation? Where is the connective tissue between these risk factors cause the DVT and the pulmonary embolism? And there wasn't any... Counselor, I have a question I want to follow up. Thank you for clarifying that. So you lost the motion to eliminate, and you didn't present Dr. Gerson's testimony at trial. The defense did, is that correct? That is correct, Your Honor. Did you object at that time on the same basis as your motion to eliminate? Yes, and we did cite to the record in that. Because when that came up, when that actually came up during the testimony, not when he was first presented on the stand, but the minute he started going into that testimony, we did object to it. And we stated it in the record where we did. And we actually argued it. There was actually a substantial argument to that. And I stated at the end, then we're still standing on our previous objection. So the defendant is simply wrong when he says you forfeited this objection because you failed to raise a contemporaneous objection to the testimony at trial? That is correct. And we cited to the record where we actually did do that. And again, we actually cited in the record where we had extensive argument on that. And I believe that was, if I'm looking at the record trial counsel. Yes, I was at trial. I was the trial attorney. Yes. The argument was that trial motion. That is correct. That is correct. Go ahead. And that was for purposes of clarification that was in the record are 726 line 16 through 22. So we did also make the subsequent argument that that. I'm sorry, not the subsequent argument, but when that was raised, we said, where is the causation? Where is the basis in the evidence to show that these risk factors that Dr. Gershon is bringing up caused these problems? So, and again, and this is a point that we raised at trial. And we stated this in not only in our, our motion and limiting but also during our argument with the court is that there was a pre physical and in the pre physical clearing him for this surgery. None of those risk factors ever came up. They were never concerns. If those risk factors were concerns and they came up, no doctor would have cleared him and he would never have done that surgery. And so our argument has always been, if you don't have that anywhere in the evidence, then you cannot testify that those are risk factors that caused the subsequent problems. There is only one for sure in the evidence cause of these problems. And that's Dr. Brightman's negligence. According to our expert, Dr. Shabinsky, Dr. Gershon is the only one that's just throwing out examples. Well, it could be this and it could be that. And we know that that causes this and that causes that from the studies. Okay. Well, you didn't provide a basis for that. You didn't provide any evidence for that. You don't provide the studies for that. You're just throwing that out to the jury. That is speculative and that should have been barred. Why isn't that appropriate opinion by an expert from the field? It is. It is not an appropriate opinion when you're trying to link it up to the cause of the damage, because you need to have evidence, actual evidence, either direct or circumstantial, not something. Well, these are the things that a person suffers, and therefore, that's what it causes. Didn't Dr. Gershon testify that he reviewed all the records in this case? Yes, he did. And when he testifies as to something that based upon all that might or could be the result or could have been the cause, why is that improper for an expert? Because first off, all he did was when he reviewed the records is that he was simply saying, well, that's my speculation. That's my guess, because if he did have these other issues to begin with, well, then that's what must have caused it. Never at any time does he say that it was the negligence of Dr. Brightman. That's a given because we know that he did the procedure. These other things are not given. We don't have that. Oh, especially when we get to Dr. Lynn's testimony, Dr. Lynn, who saw him for the DVT and the pulmonary emboli, never said that it was because of these other issues, overweight, smoking, what have you. He simply said, and it's right there in Dr. Lynn's follow up record from Swedes. He says he had a surgery. He had actually several surgeries. And now he's coming in for a DVT and a pulmonary emboli. That is correct. And that actually tracks with what Dr. Shavinsky testified to, that you're going to develop a DVT and a pulmonary emboli following a surgery. In fact, following several extensive surgeries. And that is documented in the Swedes medical records following all of this surgery when he did his post-op for these problems that he was having for the DVT and the pulmonary emboli. So that's actually established. But nowhere does it say, oh, he's coming in because he's a smoker. Oh, he's coming in because he's overweight. Oh, he's coming in because of X, Y, and Z. None of that is ever stated in Dr. Lynn's follow up report. What Dr. Lynn says is that he's suffering this DVT and pulmonary emboli because he just came out of surgery. That's what he bases it on. And that's specifically stated in the records. And that's why we stated Dr. Gershon's testimony is speculative. We have hard evidence that we can say, and we did say at the time of trial, that is what led to your DVT and to your pulmonary emboli, not this other stuff. So you can't bring that in. And that's just Dr. Gershon's speculative testimony in regards to the subsequent injuries. Dr. Gershon also gives speculative testimony in regards to what possibly happened or could have happened at the time of the very first surgery. And I can get into that if you want, Your Honors, because what he was saying at that time that, oh, well, he did the laparoscopic procedure for the lap band removal. And yeah, we know that he injured the spleen and we know that there's decalculation and bleeding around the spleen, but he didn't have to examine it. And if he did examine it, the laparoscopic procedure, that was just fine. Well, no, it's not fine because he had bleeding. And that was the thing that we kept hammering home and our expert kept hammering home is that when you have an injured spleen, when you have decapsulation, when you have bleeding in the exact area that we later found out there was bleeding and that Dr. Brightman failed to control, then he should have explored. He was required to explore. And that was what Dr. Shabinsky said. But then when you got to Dr. Gershon, he's just speculating and saying, no, no, that's just fine. I think that's okay. Well, not what you think is okay, but what is required. Also, if I may. Yes. Yes, Your Honor. Let's talk about Dr. Shabinsky a moment. He testified the negligence was not converting to the open procedure during the initial surgery. Did he specifically testify that Dr. Brighton's negligence caused the bleeding during the first surgery? Yes. And can you point to me in the record where that is? If you look in the record, R562 lines 13 through 24. What's the record page number again? I'm sorry for interrupting. No, no, no. Thank you. Thank you, Your Honor. It is R562 lines 13 through 24. And then also R563 lines one through three. And I can actually read the testimony for you. And it says, this is Dr. Shabinsky. The fact is, when you injure the spleen, there's always a concern that bleeding can happen and be hidden behind and around the spleen in areas you can't easily see laparoscopically. You'll get away with it most of the time, but that's not the standard of care. The standard of care is you have to do. Counselor, I guess my question is. Sorry about that, Judge. I'm sorry. I'm sorry. I understand he's saying, if you injure the spleen, but where specifically in the record, does he say Dr. Brighton's negligence was negligent and injured the spleen? Well, we know that he injured the spleen, and that was a thing. Specifically, it was that he injured the spleen and that the exploration, I apologize, Your Honor, let me go back and clarify the answer. It was not necessarily the injuring of the spleen, but it was the failure to explore the bleeding that would have been in that area after he injured the spleen. What started out as a complication or could have been a complication was allowed to morph into malpractice. And here's the key. At right before the second surgery, and this is what we argued at the time to the court and to the jury at the time of the second surgery, right before the second surgery was to happen. Dr. Brightman, and this was confirmed by his testimony and Ms. Rousey's testimony, the wife of Mr. Rousey, he came out and he said, please sign this informed consent. We need to get in there again. There's a lot of bleeding. We need to remove the spleen. This is before he did any exploratory surgery. This is before he ever opened him up. He knew that that was the place where the bleed was going to be. And he specifically went out there and he told Ms. Rousey, sign this informed consent form. Well, how do you know that the spleen is the cause of your bleed or the area around the spleen is the cause of your bleed if you didn't know about it during the first surgery? He knew about it. He failed to explore it and he closed them up and he sent them into recovery. And not only 30 minutes, not even 30 minutes later, he's hypotensive. He loses, I believe, four liters of blood or a lot of blood and he has to be resuscitated. Your time is about up, but I have a question I want to ask you. Yes, Your Honor. You say that the trial court improperly allowed into evidence how Dr. Chavinsky was retained through an agency called the Technical Advisory Service for Attorneys. Is that correct? Yes, Your Honor. Tessa. Yes. You made a motion to eliminate to fire that testimony and it was denied? Yes, Your Honor. And then during his testimony, you elicited that from a direct examination from Dr. Chavinsky? I don't believe it. I don't believe it was under. I believe so. Yes, Your Honor. Yes. If I remember correctly, yes, because of the court's ruling. Okay. Well, given that you elicited this testimony, how do you have standing to complain about it on appeal? Well, because we at the time that we objected to it in our motions in limine, we also had a continuing objection that we wanted to preserve. And then we went ahead and argued that or presented that to inoculate ourselves before the jury. We were simply following the jury's... Because of the court's counsel, motions in limine aren't binding and you have to renew the objection when the evidence is offered at trial and you forfeit it when you waive it. It's not even forfeiting when you introduce that evidence yourself, which you did, didn't you? Well, we don't believe we did forfeit it, Your Honor. But we also argued in our brief that even if we did forfeit it, that that is a substantive issue that the court can then still take under consideration. Well, why should we when you elicited the testimony? Because we were following Judge Fabiano's rulings. Okay. All right. Thank you, Your Honor. You're out of time, but you'll have time in rebuttal. Thank you, Your Honor. You may proceed with your argument. Thank you, Judge, and may it please the court and good afternoon, counsel. Chris Strinkwein on behalf of Dr. Breitman and Rockford Health Physicians. As the court noted, four of plaintiff's nine appellate issues relate to damages. Because the jury returned a defense verdict, it never reached the issue of damages. It was instructed not to. The law presumes that it followed the instruction. So even if there was error with regard to contentions one through three and seven, which there was not, plaintiff cannot demonstrate the requisite substantial prejudice affecting the outcome of the case. And those four contentions should be rejected out of hand for that reason. Plaintiff's fourth and fifth appellate contentions can also be rejected for failure to demonstrate substantial prejudice affecting the outcome of the trial. Because they raise proximate cause issues, and the general verdict rule dictates the conclusion that the jury determined that Dr. Breitman did not breach the standard of care. Such that any error regarding proximate cause, which there also wasn't any, was similarly harmless. So unless the court has questions about the merits of plaintiff's contentions one through five and seven, I'll focus on contentions six, eight, and nine. Contention six, there was no abuse of discretion in allowing the defendants to cross-examine Dr. Chavinsky concerning the circumstances of his retention. Specifically that he was retained from a expert referral service. The law is well settled that opposing counsel should be given wide latitude to cross-examine expert witnesses, including to probe bias, partisanship, or financial interest. The appellate court in Snelson v. Cam explained that a doctor's relationship with a professional witness referral agency clearly is a matter that may reasonably be expected to color his testimony or naturally create bias, and is fair cross-examination. In denying plaintiff's motion in Lumine 23, the circuit court reasoned that Snelson makes that concept clear. How an expert came to be employed by either party is fair cross-examination, and that Snelson is directly on point that an expert agency retention is fair cross-examination. The circuit court was entirely correct in that ruling, and plaintiff has failed to demonstrate that permitting the cross-examination was an abuse of discretion. What about O'Connor's argument that even though he elicited this on direct examination of Dr. Chavinsky, that that's okay because he was just preserving his objection made during the motion to eliminate? Well, I don't think that works. I think you have to make a trial objection in addition to raising an emotion in Lumine, but in any event, there was no abuse of discretion. I mean, the appellate court's decision in Snelson is right on point, and the idea that the Wilson v. Moon case, his reliance on Wilson v. Moon is misplaced because cross-examination of Dr. Chavinsky on this subject would not have unfairly revealed a previous settlement agreement as was the circumstance in Moon, because there was no previous settlement agreement. In this case to reveal, so plaintiff's six appellate contention must be rejected. Moving to the eighth, and in our view, they're really the only one that merits discussion. The circuit court did not abuse its discretion in giving the jury instruction limiting plaintiff's res ipsa loquitur theory to Dr. Breitman's alleged failure to control the bleeding from the splenic artery during the second surgery. And there's two reasons why plaintiff's eighth contention lacks merit. First, there was no evidence that a bleeding spleen does not occur in the absence of negligence. And in fact, Dr. Chavinsky's opinion was that the spleen can occur in the absence of negligence. On page 37 of his brief, plaintiff writes without citation to the record that the injury to the spleen and area around and behind the spleen can only arise through negligence. There's no citation to the record because there was no such evidence presented at trial. Dr. Chavinsky did not testify that the bleeding spleen does not occur in the absence of negligence. And Mr. Greenblatt, there are some scenarios where expert testimony would be excused when a claim of res ipsa is raised. Is this one of those situations? No, Your Honor. The absence of negligence here needs to be established with expert testimony. And in fact, Dr. Chavinsky's opinion was that he should have converted to an open procedure and the standard of care would require taking the spleen. This is in sharp contrast to the Johnson v. Armstrong case, which I'm speculating you're referring to, where we just had a simple thing where the hip replacement resulted in nerve damage and the court said that that was a circumstance where you didn't need the expert testimony. So the answer is no. In this case, there needs to be expert testimony for purposes of establishing that essential element of res ipsa, that it doesn't happen in the absence of negligence in order to proceed with the res ipsa method of circumstantial proof. And secondly, this contention lacks merit for a second reason, and that's because Dr. Chavinsky's opinion sets forth specific negligence. That is a specific course of conduct on Dr. Brightman's part that breached the standard of care and that opinion obviates the res ipsa loquitur method of proof. As a matter of legal analysis, is it your contention that if you, as here, plaintiff has presented specific expert testimony claiming negligence occurred, that as a result, a res ipsa loquitur instruction would never apply? I won't say never. That's the general rule, Your Honor, where you give a specific opinion as to the specific course of conduct that was negligent by the doctor that resulted in a specific injury. Generally speaking, you've boxed yourself out of res ipsa loquitur. Can you think of a situation where specific testimony by an expert that the defendant was negligent opened the door for res ipsa loquitur instruction? Not in and of itself, Your Honor, but the example would be Willis v. Morales, which is 2020 ILAP 1st 180718 paragraph 41. In that case, the experts noted several different possible sources of injury and could not determine which of the possible sources caused the injuries. And as a result, the plaintiff in Willis was permitted to proceed with both res ipsa loquitur theories and specific negligence theories. But in sharp contrast, in this case, Dr. Chavinsky testified to one source of the injury resulting from the first surgery. Specifically, Dr. Breitman's failure to convert the initial laparoscopic surgery to an open surgery and manually inspect the spleen for additional bleeds. It's important to recall that Dr. Breitman observed decapsulations on the spleen during the first surgery, during the laparoscopic surgery, and he repaired those bleeds with Surgicel. Dr. Chavinsky said that once Dr. Breitman had a bleeding spleen, he should have converted to an open procedure to make sure that he stopped all the bleeding on the spleen. Manually inspect the spleen for additional bleeding. That's an opinion of specific negligence that precludes the res ipsa theory. Because if his opinion is believed, that's conclusive evidence that establishes the exact cause of plaintiff's injuries and Dr. Breitman's exact course of conduct that was negligence. Willis stands for the general proposition that if a plaintiff knows in what circumstance the defendant is guilty of negligence and presents specific evidence, that conclusively establishes the exact cause of the injuries, the doctrine of res ipsa loquitur is inapplicable. And the Johnson v. Armstrong case does not change that rule. In that case, the precise course of individual conduct that led to the plaintiff's injury was unknown, and plaintiff established that under normal circumstances, a hip replacement does not result in severe and permanent nerve damage. In contrast, in this case, plaintiff has failed to identify evidence of an injury relevant to the first injury, a bleeding spleen. He fails to show that that does not happen in the absence of negligence. And Dr. Chavinsky also provided an opinion as to the precise course of Dr. Breitman's conduct that led to this injury, as I've stated. So for both of those reasons, plaintiff has failed to demonstrate that the circuit court abused its discretion in limiting the jury instruction on res ipsa to the theory that of Dr. Breitman's During Dr. Breitman's second surgery with respect to tying off the splenic arteries. I have another question, counsel, dealing with the question of Dr. Gerson. How's it pronounced? Gerson or Gershon? Gerson. Okay, Dr. Gerson. You've heard a felon's counsel complained that his testimony was too speculative and complained otherwise that he shouldn't have been permitted to testify. What about that? It's incorrect. The law is well settled that a expert can testify in terms of possibilities and probabilities. For the cases cited in our brief established that and there's actually a newer case now called Wilson v. Dandy. 2024 elap 5th 2220552 paragraph 42 that specifically states it is permissible for a medical expert to testify about his opinion in terms of possibilities or probabilities. As long as the opinion is based upon a reasonable degree of medical certainty. So there's no merit in the in the argument that just because Dr. Gerson's said the pulmonary embolism and so forth could be caused by more than one source. So I think it's fair to say that there was no abuse of discretion in the circuit court's ruling in that regard. Moving to the 9th issue raised on appeal plaintiff's 9th contention is that the circuit court should have granted his request for an editor to a verdict returned in favor of the defendants. This is the most frustrating of plaintiff's nine appellate contentions because he has been advised over and over that this argument is entirely frivolous defendants made it clear that this argument was frivolous in their response and opposition to plaintiff's post trial motion defendants again made it clear that this argument was frivolous during oral argument on the post trial motion. And at the conclusion of that argument the circuit court told plaintiff that the argument was frivolous and then in its written order denying plaintiff's post trial motion the circuit court called the argument nonsensical plaintiff has ignored these admonitions and has instead pressed forward with his editor to a defense verdict contention before this appellate court. Each step of the way plaintiff has cited the same four cases, none of which involved an editor to a defense verdict. On page 30 of his reply brief plaintiff writes contrary to defendant appellee's argument editors appropriate and warranted when the jury returns a zero award for a plaintiff if the zero verdict was improperly entered. That sentence is not followed by citation to authority and that's because there's no such thing as an editor to a defense verdict. Again, it, the, the, the raised up so loquitur issue is really the only one that requires analysis in this case everything else is either harmless error or waived and unless the court has a mind and we're not urging the court to weigh into the marks Miller case again. That issue, of course, is also a damages issue that's been that for which plaintiff has not established substantial prejudice affecting the outcome of the trial and the court doesn't need to engage in the marks Miller Babak in debate. And unless the panel has any other questions. For all these reasons, Dr. Brightman and Rockford health physicians respectfully request that this court affirm the judgment of the circuit court of Winnebago County. Okay, thank you, Mr drink wine, Mr purposes rebuttal argument. Thank you, Your Honor. In regards to the answer that counsel gave that residents a low quarter does not apply in this matter that goes directly against judge Fabiano's ruling that it does apply. However, in a limited manner, it does apply. So that is wrong because even judge Fabiano said, Okay, it does apply, but I believe it applies in a limited manner. We disagree with that because from the very testimony of our expert, Dr. The malpractice went all the way back to the beginning to the very first surgery. Now, a very interesting, a very, I want to make a very clear point here. And this actually ties into the Willis case with the hip surgery that led to the nerve damage. In this case, we have a left band removal. That's an outpatient procedure. That's a simple procedure. And yet, somehow, it transformed and involved and evolved into three surgeries, a hypotensive patient that needed resuscitation in the recovery room. That is the classic definition of a residence a low quarter because you don't go into a lap band surgery to have your spleen removed. Counsel, if that were the case, there would be no point in having a written informed consent signed by the patient. There are risks and complications that occur can occur in the absence of negligence and in a medical malpractice case, you are required to establish negligence. Unless you are able, through the assistance of expert testimony, to establish a reciprocal case where the expert testifies that the injury would not have occurred in the absence of negligence. So, just simply because you've got a bad outcome and you've got three subsequent procedures and everything that you're saying does not mean that you have either a reciprocal case or have established negligence. That would be correct, Your Honor, if the informed consent was for a splenectomy from the very beginning. If the informed consent was for gallbladder removal, removal of another organ. Here, we have a simple outpatient procedure that's a gastric lap band removal. That's it. And yet, we had not only the injury of a spleen and the removal of a spleen, but the bleeding, the uncontrolled and unfound bleeding that led to this man's DBT pulmonary embolism and the removal of a spleen that now has opened him up to opportunistic infections in the future. So, that's why I am saying you go from a simple outpatient lap band removal to the removal of a spleen, uncontrolled bleeding, hypotensic, and they're resuscitating you because you're almost died. That is the classic definition of res ipsa that but for the doctor's negligence, this injury that had no relation to the lap band removal would never have occurred except for malpractice. That is what I wanted to emphasize to the court. Thank you very much. I see that my time is up. Well, you actually have two minutes remaining. Oh, thank you. Thank you, Your Honor. And just to go also back to the waiver issue, Judge Fabiano, if you look at her order in deciding our motion for judgment, notwithstanding the verdict, never raised the waiver issue. She never said all these issues are waived. I'm not going to get into them, although for purposes of completeness, I'm going to discuss them now. She never said that. So, in her ruling, Judge Fabiano didn't find a waiver issue on any of the issues that counsel is saying that we waived when we didn't preserve our or supposedly didn't preserve our objection. We did. And even Judge Fabiano said, no, no, there's no waiver here. She never raised it. And she would have raised it if we had actually waived it. And the other issue, Your Honor, is that this is not harmless error, especially when it comes to Babakin and to Maximiller. There is a specific statute on the books that says that a plaintiff is entitled to his lined item damages. And we have both, you know, appellate cases, Maximiller and Babakin, that discuss this issue. And we clearly showed that the flawed reasoning of Judge Fabiano was the flawed reasoning that Babakin ruled against and said, no, emotional distress is not a part of pain and suffering and deserves its own specific itemized line item on the jury verdict. And that was denied to the plaintiff in this case. That's not harmless error. That's a violation of Illinois law. And then finally, you are out of time at this time. Thank you, Your Honor. Appreciate your argument, Mr. Drinkwine. Thank you. The case will be taken under advisement and we will issue a written decision.